## The McGinley Corporation, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 59471. Promulgated October 4, 1934.

*Lawrence Tarlton*, *Esq.*, for the petitioner.
*DeWitt M. Evans*, *Esq.*, for the respondent.

### OPINION.

Adams: This proceeding involves income taxes and penalties for the years 1927 and 1928 in the aggregate sum of $25,136.01, as follows:

| Year | Tax | Penalty |
|------|-----|---------|
| 1927 | $18,023.35 | $901.17 |
| 1928 | 5,915.70 | 295.79 |
| Total | 23,939.05 | 1,196.96 |

Petitioner is a Delaware corporation, with its principal office in Fort Worth, Texas, and Wm. McGinley is its president.

It alleges that respondent erred in disallowing a loss in margin advances alleged to have been made by it during the year 1927 in the sum of $31,300. It is conceded, however, that the sum of $2,427.23 is unallowable. Petitioner also assigned error in that the respondent disallowed a loss on the sale of stock in the sum of $100,000 during the year 1926. Petitioner assigned certain other errors in the disallowance for the calendar year 1928. It alleged respondent erred in disallowing the claimed deduction of $50,000 for legal expense and in reducing the depreciation claimed in the sum of $1,503.33. Petitioner contests the penalties proposed for both years in question.

At the hearing, petitioner's claim as to the reduction of legal expense for the year 1928 in the sum of $50,000 was abandoned and respondent admitted that petitioner was entitled to depreciation claimed in the sum of $1,503.33. Respondent waived the penalties proposed.

This leaves two issues for determination, namely, whether respondent erred in disallowing petitioner's claim for margin advances during the year 1927, and whether he erred in disallowing the loss on the sale of stock in the sum of $100,000 during that year.

During the month of June 1927, dealing through Shearson Hammill & Co., brokers, of Chicago, Illinois, there were purchased in the name of Wm. McGinley, as an individual, 2,000 shares of Pan-American B stock, the aggregate price being $113,350. This was a purchase on margin.

Petitioner's president, Wm. McGinley, testified that the Pan-American B stock was purchased in his name but for the account of petitioner; that the transaction was handled in this way because he was advised by the brokerage firm that the corporation could not legally do business in the State of Illinois. He testified that petitioner paid for this stock in the following manner: On June 14, 1927, the corporation issued its check payable to Wm. McGinley in the sum of $10,000, this being the initial payment on 1,000 shares of the Pan-American B stock; on June 28, 1927, petitioner issued its check payable to self in the sum of $10,000. Each of these checks was signed "Wm. McGinley Corporation, by Wm. McGinley, President", and each had a memorandum on the face as follows: "Shearson Hammill & Company account Pan-Am stock." On August 25, 1927, Shearson Hammill & Co. made a draft on Wm. McGinley, personally, for the sum of $7,500, which was paid and credited to the Wm. McGinley account. The witness testified that thereafter petitioner paid an additional sum on the transaction of $7,500, but that the check was lost. On December 30, 1927, Wm. McGinley directed Shearson Hammill & Co. to sell 2,000 shares of Pan-American B stock for the McGinley Corporation, petitioner. This sale was made on that date for the sum of $86,710.

There was introduced upon the hearing a statement of the McGinley Corporation account with Shearson Hammill & Co. which shows this transaction and has on it this memorandum, "Short 2,000 Pan-Am B." On January 3, 1928, there were bought in the name of petitioner 2,000 shares of Pan-American B stock at a price of $87,175, and, on the same date, Shearson Hammill & Co. transferred to Wm. McGinley's personal account a charge of $465, being the difference between the sale and purchase price of the 2,000 shares of Pan-American B stock sold on December 30, 1927, and purchased on January 3, 1928. It appears from the statement of Shearson

Hammill & Co. that on July 20, 1927, a dividend on 2,000 shares of Pan-American B stock in the sum of $3,000 was credited to the account of Wm. McGinley, personally; that on October 20, 1927, there was credited to Wm. McGinley's personal account $2,000 as a dividend on 2,000 shares of Pan-American B stock.

Wm. McGinley testified that when he ordered the brokers to sell the 2,000 shares of Pan-American B stock on December 30, 1927, he had overlooked the fact that this stock was in his name and not in the name of the corporation on Shearson Hammill & Co.'s books and that he intended to close the transaction for the corporation by selling the stock purchased in his name in June 1927; that upon receiving the statement from the brokers showing the corporation was short 2,000 shares of Pan-American B stock, in order to relieve the situation, he on January 3, 1928, bought 2,000 shares of Pan-American B stock in his own name, but that such purchase was really for the benefit of the corporation.

At the hearing petitioner did not introduce its books showing how it treated these transactions and there was no testimony save that hereinabove referred to. Wm. McGinley seems to have dominated and controlled the petitioner corporation as its president and he seems to have made no distinction between his personal dealings and those of petitioner. Petitioner's contention here is this situation grew out of a series of mistakes and misunderstandings on the part of Wm. McGinley, its president.

Petitioner is bound by what it did and not by what it intended to do. *Mary E. Horner*, 28 B.T.A. 360; affd., 72 Fed. (2d) 407; *Commissioner* v. *Merchants & Manufacturers Fire Insurance Co.*, 72 Fed. (2d) 408.

Upon the testimony in the record, we do not feel justified in setting aside the Commissioner's determination. The burden being upon the petitioner to overcome the correctness of the determination and it having failed to meet this burden, the Commissioner is affirmed on this issue.

The remaining question is, Did the Commissioner err in disallowing the deduction of $100,000 loss claimed by petitioner on the sale of certain stock by it which Wm. McGinley held in the McGinley Land Co.? Wm. McGinley, petitioner's president, testified that he, as an individual, purchased from the petitioner in 1927 what he called $100,000 worth of stock in the McGinley Land Co. The McGinley Land Co. was a corporation owning farm lands in the State of Missouri. It was organized with an authorized capital stock of $200,000, all of which was paid in by the transfer to it of certain lands in the State of Missouri. Petitioner acquired 100,000 shares

of this stock at a par value of $1 per share from the witness Wm. McGinley, but the records fail to disclose what consideration, if any, was paid by petitioner to Wm. McGinley for this stock. The McGinley Land Co. became indebted to petitioner in the sum of $107,000. During 1927 petitioner transferred to Wm. McGinley 100,000 shares of stock, the consideration being that Wm. McGinley assume the indebtedness of the McGinley Land Co. to petitioner.

The record wholly fails to show the value of the stock when it was acquired by petitioner, what it paid for it, or how it was paid for. Petitioner's contention that the McGinley corporation purchased the stock of the McGinley Land Co. at a cost of $100,000 is not supported by the record.

We are unable to make a determination as to what was the petitioner's loss, if any, by reason of the transaction and the Commissioner's determination on this issue is approved.

Due to the adjustments necessary to be made by reason of the concessions made by both parties upon the hearing,

*Decision will be entered under Rule 50.*